You may be seated. Our next case in the afternoon is People of the State of Illinois v. Trevor Justice for the appellate, Mr. Rosen, and for the appellee, Mr. Doty. You may proceed. May it please the court, counsel, my name is Zachary Rosen from the Office of the State Appellate Defender, and I represent Mr. Trevor Justice. Now, Mr. Justice thought he was getting a good deal. He thought he was getting a bargain when he entered his guilty plea because his attorney told him that if he went to trial, he'd face a maximum sentence of 14 years, but if instead he decided to enter a guilty plea, he'd only face a maximum of 7 years. Now, with this advice, Mr. Justice thought it was a great idea to enter his guilty plea, but unfortunately, that advice was incorrect. His defense attorney made a mistake of law, and for that reason, it was ineffective assistance of counsel, and so Mr. Justice asks for a new trial. Now, this court has seen this issue before. In fact, it advised in People v. Williams that the prosecutor, the defense attorney, and the defendant should all understand the applicable minimum and maximum sentences that the defendant's facing if the state gets convictions at trial, and that this understanding of the minimum and maximum sentences, it should include a discussion of any sentencing enhancements, including extended terms. And certainly, there were discussions here. There were admonishments about the sentencing enhancements, but the court was incorrect. The defense attorney was incorrect, and it's that advice that leads to this claim. Mr. Justice says his counsel was ineffective because the representation was subjectively unreasonable and because it caused him prejudice. Now, it was unreasonable because an attorney's ignorance on a point of law that's fundamental to his case, combined with that attorney's failure to perform basic research on that point, is a quintessential example of unreasonable performance under Strickland. The attorney just simply didn't research the matter. He didn't look at the requirements for extended term eligibility, and he didn't ensure whether or not the prior felony was inside or outside of that 10-year span, which then would have allowed the state to ask for a doubled sentence. Now, because the attorney didn't do that, he wasn't able to offer the correct advice, and Mr. Justice needed that in order to enter his guilty plea with a complete understanding of the risks that he faced in forgoing his right to trial. Now, his prejudice, Mr. Justice's prejudice, because as the Illinois Supreme Court has addressed in Brown, and it cited Levy, the United States, that he can show prejudice merely by demonstrating that there's a reasonable probability that but for counsel's errors, he would have decided to go to trial, that he would not have entered his guilty plea. And Mr. Justice says that here. In fact, he explains clearly that he has a defense worthy of consideration. He raises that he has an actual innocence defense, because the methamphetamine precursor, the Sudafed, was found in his girlfriend's purse, not on his person. So, for these reasons, because the attorney's performance was unreasonable, because Mr. Justice was prejudiced in the fact that he didn't get to go to trial, and he made that choice under the improper advice from his counsel, we ask that you grant him a new trial. Was it correct that at the sentencing hearing, the prosecution indicated to the court that the defendant was not eligible for an extended term, and that he luckily escaped eligibility for an extended term because of the passage of time, by a short period of time? Yes, Your Honor, you are correct. Was the defendant listening? Well, I don't know. He was certainly there. He was there. He was there. I would hope that he was listening. But we know that he wasn't. As you say, the state explained that he was not eligible. But we must look at everything. Was the state right? The state was correct, yes. How do I know that? Well, it's not directly in the record that this is the date the defendant got out. It was over ten years ago. But all the attorneys agree in the post- He was in jail and prison several times, right? Yes, Your Honor, he was. Well, how can this court tell from the record whether he was or was not eligible for an extended term, based upon the fact that he was in prison and in jail on numerous occasions? Yes, Your Honor. Instead of a ten-year provision in the statute. Yes, sir. If I were able to argue the math for this court, certainly I would have. But you're right. Those dates are not in the record. So all we can rely on is the fact that the state said he was not extended eligible at sentencing. And in post-trial motion hearings, we hear both the defense attorney and the state's attorney admit that they were wrong. Say that, yeah, before sentencing, we told him that he was extended eligible, that he was facing that 14-year sentence. But we were wrong. His maximum was always seven years. And so they both admit that error. And I think that as officers of the court and as certified records on this appeal, we can address the issue now. I also think that in the interest of judicial efficiency, there's enough in the record to consider the issue as it stands today in requesting for that new trial. And that it wouldn't service this court's docket to send the case back and request that Mr. Justice establish something in post-conviction. Isn't it established, though, counsel, that essentially the extended term was taken off the table prior to the execution of the plea? Well, that was the original agreement between the state and defense counsel. Even after that, the prosecutor indicates that he's not extended eligible, so therefore it's no longer an issue for the defense. It's not something the state would then attempt to impose, arguably. Yes, Your Honor, that's true. But Mr. Justice decided to plead guilty after being told that he was not going to face the risk of a maximum 14-year sentence. That certainly was a part of the calculus in choosing to forego his trial rights. And so his decision to forego that trial right wasn't informed because he never really knew what the maximum was because of the ineffective advice from his counsel. And so those first two arguments ask for a new trial, and I think that this court can find the defense attorney was ineffective, acted unreasonably, caused Mr. Justice prejudice. However, if you do not agree, we ask in the third argument for a new sentencing hearing because the court relied on an improper factor. The court applied a factor in aggravation, that being the harm caused merely from possessing the methamphetamine precursors, and I believe the court relied on that in fashioning the maximum 7-year sentence. This is a violation of Mr. Justice's 14th Amendment fundamental right to liberty, and the Illinois Supreme Court has explained that when the appellate courts are unable to determine the weight given to an improper factor, then the case must be remanded for new sentencing because here we can't determine how heavily the court relied on the factor, but we know that it's something it did consider because it mentioned it in sentencing. We also have case law we can look at to explain it's clear the court relied when it's explicitly explained at the sentencing hearing, when it's identified, instead of mentioning it in passing. The sentencing court talked about the harm of methamphetamine possession and dealing and use in the state of Illinois at length, and it's clear that the court was considering about that pervasive drug in sentencing. It talked about how it's a dangerous and destructive drug and how that it should be eradicated from our society, and I think that the court was responding directly to the defense attorney's argument in mitigation. The court said to Mr. Fredman, he goes, that the court disagreed with Mr. Fredman's argument that being in possession of the drug, the court then inferred that he was either going to use it himself or sell it later in the community, and so he disagreed with Mr. Fredman, the defense counsel's finding, that the conduct did not cause or threaten serious harm. But this was improper for the court because there's nothing in the record to show that Mr. Justice's behavior caused any extra harm, and I say extra because the legislature has already factored in the harm of possession of methamphetamine precursors, just mere possession of Sudafed, and they've created that sentencing structure to address those concerns.  That's why the sentencing ranges are so severe, and so it was wrong for the court to consider the harm of mere possession without something more. There's nothing in the record that shows that Mr. Justice had any more propensity to cause harm that isn't inherent in the offense, and I cited to McCain as an example where the court considered that the defendant's possession of firearms showed that the defendant was ready to act violently, was ready to cause more harm. But we don't have any facts and evidence here to make a similar argument. So because the legislature has already talked about the harm in the statute, it's improper, it's not a correct aggravating factor for the court to consider it, and so if you do not grant Mr. Justice a new trial, I ask that you at least grant him a new sentencing hearing to consider proper factors in aggravation and mitigation. And might I add in closing that I don't think that there's any doubt that the court was specifically considering it in aggravation. During sentencing, the court did not say, and in aggravation, I'm considering the harm of possession. But later, in our record at page 173, the court admits that he was considering harm in aggravation. The court says that he reviewed his notes, that he reviewed the written transcript from the sentencing hearing, and that it was his recollection that I believe I properly applied the factors. But he had not reviewed the written transcript of the sentencing hearing. Excuse me, Your Honor. Yes, I misspoke. I misspoke. So you're right. He said he did not review the written transcript, but he did review his notes. And he considered his recollection. And he said, I believe I properly applied the factors in aggravation here that the defendant's conduct caused or threatened serious harm. And that's just a facial violation of the statute. So because he clearly applied that factor in aggravation improperly, I ask that if you do not agree to remand the case for a new trial under Arguments 1 or 2, that you remand for resentencing under Argument 3. And I see I still have some time, so I will yield it to the court. Time observation and a question. I didn't mean to interrupt. No, not at all, Your Honor. You fashioned that argument. It's a good argument. In practice, isn't it the norm that the trial court will state at the time of sentencing, these are in fact the factors of aggravation and or mitigation, and then list those factors? Whereas you're extrapolating your argument from later on in the record. To me, my view of your argument is a little suspect in the timing of when the court made these findings. I understand that point, Your Honor. And I think it is clear the court says in aggravation, I'm considering his delinquency, his criminal history, and deterrence. And in that sentence, the court does not say the harm that I argue is inherent in the statute for possession. But I think that if this court looks at pages 151 and 152 of the record, you will look at the dialogue that occurred between the defense attorney and the court when the defense attorney was arguing about the factor in mitigation. And so that defense attorney makes that argument in mitigation, and the sentencing judge jumps in, nearly interrupts the defendant to talk about how he disagrees with the defense attorney's argument. And so we need to look at that interruption and that disagreement really in two ways. He goes, no, I disagree that it's a factor in mitigation. Well, does that mean that it's just a neutral factor that the court is considering? Or is it, as I argue, if you disagree that it's mitigation, it is the inverse relied on in aggravation. And although the court was perhaps not eloquent or direct in the sentencing hearing saying, and in aggravation I consider the harm, it's clear that that was in the court's mind. He makes that clear in the record that the state asks you to ignore. But it is a part of the record. I think that this court can properly consider it. And again, I would make a judicial efficiency argument that the issue is here. The record is complete before this court, and this court can grant the requested remedies under the first two arguments or under the third argument. And with that, I yield any more time to questioning. Thank you, Your Honors. Thank you. Mr. Godegan. May it please the Court, Counsel. As indicated, the defendant made three arguments in his brief. First, that defense counsel was ineffective. Second, that the trial court improperly participated in the negotiations. And thirdly, that the trial court considered an improper factor in sentencing. Absent questions by the court in oral argument, I would like to focus on the first issue, the ineffective assistance of counsel issue. In its brief, the state made two basic arguments on this issue. The first was that defendant's reliance on defense counsel's advice was unreasonable given the trial court's admonition. The second was that defendant has failed to establish that a decision to plead not guilty was reasonable or rational out of the circumstances. It is the second issue that I would like to talk about in oral argument. As noted, under People v. Brown, in order to establish the prejudice requirement in Strickland, a defendant who entered a guilty plea must show a reasonable probability that but for counsel's error, he would have pleaded not guilty and insisted on going to trial. The decision to go to trial must have been a rational one. Here, the state submits the defendant has failed to establish that the decision to go to trial would have been rational under the circumstances. At the hearing on the motion to withdraw a guilty plea, defense counsel testified the defendant was facing possible charges where he was being investigated. These potential charges involved methamphetamines, could have resulted in extended term and consecutive sentences, and could have been class X felonies. These charges were not brought as part of the plea agreement. In his reply brief, the defendant contends that the state's offer to drop charges was a quotation marks, relatively weak in session. However, these potential charges pursuant to defense counsel's testimony would have been class X and involved potential sentences that far exceeded the extended term on the charge to which defendant pleaded guilty. Defendant also contends that neither the state or defense counsel suggested the evidence underlying the charges would have been sufficient to convict. However, under questioning five trial court, defense counsel testified, I conveyed to him that it was in his best interest to plea because there were other charges that state could seek against him that would have very serious ramifications and would far surpass anything that would occur in the current matter. Implicit in this statement is defense counsel's conclusion that the evidence would likely be sufficient for a conviction on the other charges. Further, under questioning by the trial court, defense counsel testified, I believe that the reason for the plea of guilty, the open plea, was to avoid the other charges and that would have been my trial strategy at the time. Obviously, having been present during the negotiation, defense counsel was in the best position to determine why defendant pleaded guilty. In summary, based upon defense counsel's testimony, the reason that defendant pleaded guilty was the possibility of very serious additional charges. Thus, defendant has failed to establish that it would have been rational for him to plead guilty under the circumstances. That concludes my prepared statement. If you know from the record, or if you've examined the record, can you tell whether the defendant was eligible for an extended term sentence? I can't tell from the information available now. I can only say that if the state said that he was not extended term eligible and that this was possible, they said the other? Did both the state and the defense originally err? Yes, that is correct. So each of them said both? You are eligible, you're not eligible. No, I'm sorry. Originally, according to defense counsel's testimony, both defense counsel and the state erred. That was communicated to the defendant. The defendant then pled guilty, and he received the admonitions. And then at the sentencing hearing, the state said, defendant is not extended term. And of course, defense counsel is not going to jump up and say, oh, yes, he is. Yes. Right, okay. Thank you. Any other questions? Yeah, was this a written plea agreement? No. No. Well, was it any way conveyed then, if it wasn't in writing, that the state was going to forego filing additional charges in return for defendants being pleaded guilty? It was not. Well, what are we to make of that then? Is that something that we should, since it wasn't in writing, wasn't communicated to the defendant, something we should not assume? It was communicated to defendants. I'm sorry if I missed that. Who communicated it? Defense counsel. Defense counsel testified that he communicated this to defendants. That the state was going to forego filing additional charges. Basically, yes. Yes, that is correct. But that wasn't put into writing by defense counsel for the defendants. It was not put in writing, no. That seems awfully odd, doesn't it? I'm not familiar with all. I think frequently these kinds of agreements are oral agreements, so I don't believe that that's an unusual kind of circumstance. It made part of the record at the time of the plea, memorialized. It was not memorialized to the trial court at the time of the guilty plea hearing, no. Well, I guess my follow-up would be then, if the state decided to go ahead and charge those crimes that it had said it would not charge, was it an enforceable plea agreement? Well. It's like a contract. You know the case law says that. Would that be an oral contract? It would be an oral contract, and, you know, then we would have the issue of who to believe and is this binding and so forth. But, I mean, this was honored. The state did not file additional charges. Well, not yet anyway. And I think we can say at this passage of time, I think the defendant is out on probation, if I at least interpreted the Department of Corrections website correctly, so I think it's very unlikely that that is happening now. Thank you, counsel. Rebuttal? Yes, Your Honor. Your Honors, Mr. Justice, he is out on parole. He's a productive member of society again, but he is sitting there with that felony conviction on his record because he pled guilty and had the incorrect advice from his attorney. Now, the state says that his reliance on that advice was unreasonable because the court admonishments would have fixed any uncertainty, but that's just not the case. Please review the testimony from January 9th and January 22nd, 2015. That's when the court admonishes Mr. Justice on the crimes and sentence ranges that he's facing. And then there's an admonishment again in the guilty plea hearing on August 20th, 2015. The days do not agree with each other, and they do not affirmatively negate the advice that Mr. Justice received from his attorney, which makes this case different from the cases that the state cited in its brief. It cites Williams and Raddins, and those cases are just inept because in those cases the court very clearly negates the advice, the incorrect advice from defense counsel and says, I'm not subject to following anything that your attorney is telling you. That didn't happen here, and so I think it was reasonable that Mr. Justice relied on his attorney's incorrect advice, and that's why it was ineffective assistance of counsel justifying a new trial. Now we spoke more at length about whether or not it was reasonable or rational for Mr. Justice to want to go to trial, and the state argues that it's not rational because there were all these severe charges that were dropped. There were more severe classes that may have been consecutive, but as you pointed out, Justice Turner, it's not on the record. It's not stated at the entry of guilty plea, and I think that's important. I think that's why it's a weak concession. There was no assertion during the sentencing hearing of what the strength was on those cases, and if the state had a strong case, I think you can infer that they would have put that on the record, memorialized the bargain, put the facts of the other conviction on the record perhaps to explain how strong that case was to indicate to us on appeal that this was a serious part of the bargain, the dropping of the charges. Counsel, perhaps I've remiss in not asking counsel as well, but in Mason County, are you familiar with the practice of the prosecutor and defense attorneys? Is there some type of memorializing? Does the state write these things in a file? Do defense attorneys sign off? Do we know any of that, any of that part of the record? I'm not familiar with the practice myself, Your Honor, and so I can't speak to that, but I do agree that it seems awfully odd that if it were part of the agreement and the case were strong, I think the state would have explained that. So the state says on the record that Mr. Justice is not eligible for extended term sentencing. That happens on the record. We know from post-trial hearings that both the defense attorney and the state believed at one point that he was eligible and then realized that they were mistaken, and so in the interest of judicial efficiency, I think that this court can address it here and now. Except that just looking at his record, I don't know how it's possible. Well, we do have two. We begin this in 2003. Yes. With the sentencing on a residential burglary. Yes, Your Honor. Then we come to 2015. Yes, sir. So over a 12-year period, he was sentenced to prison three or four different times. No matter how quickly the Department of Corrections processed him and gave him credit for anything under the sun, how did he spend more than 10 years out? Well, Your Honor, you're only looking at the Class I and II offenses because that's the requirement for extendability, and so we're only looking at that case that was started in 2002, sentenced in 2003. So we need to know that outdate to get the answer for ourselves, but I don't think you need to do that here because it can certainly be done quickly in post-conviction petitions, but it's just not necessary to ask Mr. Justice to do that. He served his time. He's out. He just wants this felony off his record, or at least the chance to take it off his record by going to trial on it. What do you mean you're only looking at the original conviction? What was it for res burglary? Yes, Your Honor. What are you saying? I'm not sure I follow that. What I'm saying is that for Mr. Justice to be eligible for the extended term, you look back through a period of 10 years, and you're only looking at Class I and Class II offenses. So I was just responding to Justice Connacht's question about the other Class III and IV felony offenses that he has on his record. Those aren't eligible for the extension. So he's only looking at that res burglary. But the statute speaks in terms of not in custody for determining how many of those 10 years was in custody or not in custody. Yes, sir. Yes, Your Honor. So look at all of the times that he was in custody. And subtract them from that time. Yes. You're not disagreeing with that, then? Well, Your Honor, you know that issue wasn't briefed. It's the first I've heard of the argument. And so I don't have a clear answer for you today. I see I'm out of time. And I would argue that this Court can look at the assertions from Defense Counsel and the State on the record that says he's not eligible and rely on that. Counsel, when trial courts and defense attorneys and prosecutors are wrong about credit for time served, eligibility for sentences for extended term or consecutive terms, we are obliged to look at that. We don't treat that as a concession. We can, I suppose. I understand, Your Honor. I would argue that in determining whether or not Mr. Justice received ineffective assistance does not depend necessarily on whether he was or was not eligible. Both attorneys admit on their own that the advice was incorrect. And that's, I think, what raises this claim today. So, again, we ask for a new trial under those two arguments. But if you do not agree, we ask for resentencing under the third argument. Thank you, Your Honors.